**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY L. BLIXSETH,

*Appellant*,

v.

CREDIT SUISSE,

*Appellee.*

No. 16-35304

D.C. No.
2:11-cv-00065-SHE

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted June 17, 2019
San Francisco, California

Filed June 11, 2020

Before: Richard A. Paez, Marsha S. Berzon,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Berzon

# SUMMARY[*]

## Bankruptcy

The panel affirmed, on different grounds, the district court's dismissal of a challenge to an exculpation clause approved by the bankruptcy court as part of a settlement and confirmation plan in Chapter 11 proceedings.

The Chapter 11 proceedings were filed by Yellowstone Club companies founded by appellant Timothy Blixseth and his then-wife. The exculpation clause released certain non-debtors, including Credit Suisse, from liability for acts or omissions arising out of the Chapter 11 proceedings. In a prior appeal, this court affirmed the district court in part and reversed in part, holding that Blixseth had standing to challenge the bankruptcy court's order approving the plan and that Blixseth's challenge to the exculpation clause was not equitably moot.

As an initial matter, the panel declined to dismiss Blixseth's appeal as a sanction for his failure to respond to an order to show cause for why his appeal should persist in the wake of a purported global settlement.

The panel held that, on remand, the district court erred by dismissing Blixseth's challenge on the ground that it was barred by equitable mootness. The panel held that its prior holding on equitable mootness was law of the case and was sound.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel nonetheless affirmed on the ground that the exculpation clause was valid, and the bankruptcy court properly released Credit Suisse, a creditor, from liability for certain potential claims against it. Consistent with the Third Circuit, the panel held that 11 U.S.C. § 524(e), providing that discharge of a debt of the debtor does not affect the liability of any other entity on such debt, did not bar the exculpation clause, which narrowly focused on actions of various participants in the plan approval process and related only to that process.

## COUNSEL

Becky S. James (argued) and Rachael A. Robinson, James & Associates, Calabasas, California, for Appellant.

Christopher J. Cariello (argued), Orrick Herrington & Sutcliffe LLP, New York, New York; Robert M. Loeb, Orrick Herrington & Sutcliffe LLP, Washington, D.C.; J. Richard Orizotti, Poore Roth & Robinson P.C., Butte, Montana; Evan R. Levy, Mark A. McDermott, and Shaud G. Tavakoli, Skadden Arps Slate Meagher & Flom LLP, New York, New York; for Appellee.

## OPINION

BERZON, Circuit Judge:

We have been here, or nearly here, before. Timothy Blixseth ("Blixseth") appeals the district court's dismissal of his challenge to an exculpation clause (the "Exculpation Clause" or the "Clause") approved by the bankruptcy court as a part of a settlement plan to which Blixseth objected. The district court dismissed the challenge because it determined that Blixseth's case is equitably moot, even though we previously held his challenge to the Exculpation Clause not equitably moot. Although the court erred in doing so, we hold the Exculpation Clause valid, and so affirm the dismissal.

## I

Timothy Blixseth and Edra Blixseth, his wife at the time, founded the Yellowstone Club in 2000 as an "exclusive ski and golf community" in Big Sky, Montana. In 2005, representing that he was planning to take the Yellowstone Club global, Blixseth borrowed $375 million from Credit Suisse and other lenders. *See Blixseth v. Kirschner (In re Yellowstone Mountain Club, LLC)*, 436 B.R. 598, 607, 609–13. (Bankr. D. Mont. 2010), *amended in part by* No. 08-61570-11, 2010 WL 3504210 (Bankr. D. Mont. Sept. 7, 2010). To secure the loan, Blixseth offered the assets of companies related to the Club—Yellowstone Mountain Club, LLC; Yellowstone Development, LLC; Big Sky Ridge, LLC; and Yellowstone Club Construction Company, LLC. *Id*. at 608–13.

Blixseth and Edra Blixseth divorced in 2008. As a result of the divorce proceedings, Edra Blixseth became the indirect owner of the Yellowstone companies. *Id*. at 632. The

companies had entered "a downward spiral," *id.* at 618, largely because Blixseth mismanaged and misused the money from the 2005 loan, *see id*. at 613–15. As a result, repayment of that loan was no longer viable. *Id*. at 620. Edra Blixseth decided to take the companies (collectively, the "Debtors") through Chapter 11 bankruptcy proceedings, with the intention of selling the Debtors' assets to CrossHarbor Capital Partners, LLC, a real estate management company that had purchased residential lots in the Yellowstone Club and had offered to buy the Club. *Id.* at 619–21, 630–31.

The bankruptcy proceedings were contentious. The Debtors, Blixseth, CrossHarbor, Credit Suisse—the Debtors' largest creditor—and a committee of unsecured creditors battled over the companies' assets. As the bankruptcy court noted, "litigation and the threat of litigation is and was plentiful in this case." *In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 274 (Bankr. D. Mont. 2011).

Settlement negotiations narrowed the scope of the litigation. On April 3, 2009, the Debtors filed a Second Amended Reorganization Plan and Disclosure Statement, which included an exculpation clause releasing certain non-debtors from liability for acts or omissions arising out of the Chapter 11 proceedings. Credit Suisse was not included as an exculpated party. It objected to the plan and, specifically, the Clause, on the ground that "such releases are strictly forbidden in the Ninth Circuit and grounds for denial of confirmation of the Plan." Blixseth, who was also not included as an exculpated party, adopted and joined Credit Suisse's objections.

Credit Suisse's objection threatened the confirmation of the plan and set off another intense round of negotiations. Over the course of a weekend in May 2009, Credit Suisse,

CrossHarbor, and the Debtors negotiated a "global settlement" that allowed the Debtors to avoid liquidating their assets. *Id*. at 264–65. This settlement formed the basis for the Third Amended Joint Plan (the "Plan"). The Plan resolved lingering litigation between the parties and, relevant here, included the Exculpation Clause at issue, which now covered Credit Suisse as an exculpated party. The full Clause, set out in Section 8.4 of the Plan, provides:

> None of [the Exculpated Parties, including Credit Suisse, CrossHarbor, and Edra Blixseth], shall have or incur any liability to any Person for any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan; provided, however, that nothing in this Section 8.4 shall be construed to release or exculpate any Exculpated Party from willful misconduct or gross negligence as determined by a Final Order or any breach of the Definitive Agreement or any documents entered into in connection therewith.

Blixseth, who was not covered by the revised exculpation clause, again objected to the Plan. The bankruptcy court approved the Plan on June 2, 2009, and Blixseth appealed. The district court reversed the bankruptcy court's confirmation of the Plan because of the breadth of the Exculpation Clause. The court instructed the bankruptcy

court to "explicitly identify and delineate those persons or representatives determined to be within the scope of the release parameters of Section 524(e)."

On remand, the bankruptcy court conducted two days of evidentiary hearings and argument on the Exculpation Clause. On September 30, 2011, the court confirmed the plan once more, not modifying the Plan but construing the Clause to be "narrow in both scope and time." *In re Yellowstone Mountain Club, LLC*, 460 B.R. at 272.

Blixseth appealed again. The district court rejected the Plan proponents' argument that Blixseth's appeal was barred by the doctrine of equitable mootness but concluded that Blixseth did not have standing to appeal the bankruptcy court's approval of the Plan. Blixseth and the Plan proponents cross appealed to this Court. In an unpublished disposition, we affirmed the district court in part and reversed in part, holding (1) that Blixseth was a "person aggrieved" by the bankruptcy court's order and thus had standing to challenge that order, and (2) that Blixseth's challenge to the Exculpation Clause was not equitably moot because it was "apparent that one or more remedies is still available." *Blixseth v. Yellowstone Mountain Club, LLC*, 609 F. App'x 390, 391–92 (9th Cir. 2015) (citation omitted). We remanded to the district court with instructions to consider the merits of Blixseth's challenge to the Clause.

But on remand, the district court did not rule on the merits of Blixseth's challenge to the Clause. Instead, it dismissed Blixseth's challenge on the ground that it was barred by equitable mootness.

This appeal followed.

**II**

As an initial matter, we face a procedural question: Credit Suisse contends Blixseth's appeal should be dismissed outright because of his failure to respond to our order requiring him to show cause for why his appeal should persist in the wake of a purported global settlement.

During the pendency of this appeal, we became aware that settlement negotiations among the parties to the dispute had been ongoing and the parties might have reached a settlement. We issued an order stating:

> It appears that these appeals may be moot because of settlement or should otherwise be dismissed. Within 21 days after the filing date of this order, appellant shall move to voluntarily dismiss these appeals or show cause why these appeals should not be dismissed. If appellant fails to respond to this order, these appeals will be automatically dismissed by the Clerk for failure to prosecute. See 9th Cir. R. 42-1. If appellant files a response, appellees shall file a response or an appropriate motion within 14 days after service of appellant's filing. Further briefing is stayed pending resolution of this order.

It turned out that Blixseth had settled with two parties, CrossHarbor and Yellowstone Mountain Club, LLC, but not with Credit Suisse. In response to our order, Blixseth moved to dismiss CrossHarbor and Yellowstone Mountain Club; he did not explain why he made no motion concerning Credit Suisse, nor did he explain why his appeal with regard to Credit Suisse was not moot.

Our order had stated that Blixseth's appeal would be "automatically dismissed by the Clerk," if he failed to respond to the order. In fact it was not dismissed. Blixseth did respond to the order, albeit incompletely, by moving to dismiss two defendants but not responding with regard to Credit Suisse.

Blixseth finally did respond as to mootness with regard to Credit Suisse—a month and a half later than required by our order—after Credit Suisse moved to dismiss his appeal.[1] Given Blixseth's belated response with regard to Credit Suisse, we have the authority to dismiss Blixseth's appeal now for incomplete compliance with our order. But equitable factors persuade us not to do so.

Under our Circuit's rules,

> [w]hen an appellant fails to file a timely record, pay the docket fee, file a timely brief, or otherwise comply with rules requiring processing the appeal for hearing, an order *may* be entered by the clerk dismissing the appeal. In all instances of failure to prosecute an appeal to hearing as required, the Court *may* take such other action as it deems appropriate.

9th Cir. R. 42-1 (emphases added). In general, "[d]ismissal is a harsh penalty and is to be imposed only in extreme circumstances," because, *inter alia*, "public policy favor[s] disposition of cases on their merits." *Henderson v. Duncan*,

---

[1] According to Blixseth, Credit Suisse contributed to his failure to respond by unexpectedly refusing to sign the settlement release the other parties executed.

779 F.2d 1421, 1423 (9th Cir. 1986). We routinely dismiss cases pursuant to Rule 42-1 when an appellant fails to file an opening brief. *See, e.g.*, *Hinds & Shankman, LLP v. Lapides*, No. 19-56236, 2020 WL 1943511, at *1 (9th Cir. Mar. 24, 2020). But in circumstances closer to those here, we have chosen not to dismiss.

*Radici v. Associated Insurance Cos.*, for instance, involved an appellant who filed a Civil Appeal Docketing Statement late, in violation of an order that "specifically provided that failure to file [the statement] in timely manner would result in dismissal." 217 F.3d 737, 746 (9th Cir. 2000). We nonetheless declined to dismiss the appeal in *Radici*, because "Appellees' counsel conceded that Appellants' delay . . . did not prejudice or harm her clients' interests," making dismissal "appear[] harsher than necessary." *Id*.

Credit Suisse does not concede that Blixseth's delay caused it no prejudice, but we cannot identify any interest of Credit Suisse's that was harmed as a result of the delay. And, like the appellant in *Radici*, Blixseth did respond—if incompletely—to our order, by moving to dismiss CrossHarbor and Yellowstone Mountain Club. In light of those factors, and given the extensive litigation that has occurred to date over the validity of the Exculpation Clause, dismissal "appears harsher than necessary." *Id*. Rather than sanction Blixseth for his incomplete compliance with our directive, we consider the substance of his appeal.

## III

### A

On remand from Blixseth's earlier appeal, the district court dismissed his case on the ground that Blixseth's

challenge to the Exculpation Clause was equitably moot. In reaching this conclusion the district court disregarded our earlier holding that "Blixseth's appeal as to the exculpation clause is not equitably moot, because it is apparent that one or more remedies is still available." *Blixseth*, 609 F. App'x. at 392. Our holding bound the district court, and it binds us now, as the law of the case. *See Herrington v. Cty. of Sonoma*, 12 F.3d 901, 904–05 (9th Cir. 1993).

Even if we were not bound by our earlier decision, we remain convinced that it was sound. Credit Suisse argues, and the district court concluded, that Blixseth's appeal is moot because his only proposed remedy, invalidating the Exculpation Clause, "would require that the [Bankruptcy] Plan be vacated and constructed anew, thereby creating 'an uncontrollable situation for the bankruptcy court.'" *Blixseth v. Yellowstone Mountain Club, LLC*, CV-11-65-BU-SEH, slip op. at 4 (D. Mont. Mar. 23, 2016) (quoting *Motor Vehicle Cas. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 677 F.3d 869, 881 (9th Cir. 2012)). But equitable mootness involves the capacity of courts, not parties, to fashion a remedy. As *In re Thorpe* stated, "[b]ecause traditional equitable remedies are extremely broad and vest great discretion *in a court devising a remedy*, we expect that if there is violation of Appellants' legal rights from the plan, the *bankruptcy court* should be able to find a remedy that is appropriate." 677 F.3d at 883 (emphases added). There are "plan modifications adequate to give" Blixseth at least some relief—for example, the bankruptcy court could modify the Plan to make even more express the limited temporal and substantive scope of the Exculpation Clause. *Id.* "Where equitable relief, though incomplete, is available, the appeal is not moot." *Id.*

**B**

Because it improperly dismissed the case as equitably moot, the district court did not determine whether the Exculpation Clause is valid. We could remand the case once more, but will not do so. "We are in as good a position to review the bankruptcy court's decision as is the district court." *Sousa v. Miguel (In re United States Tr.)*, 32 F.3d 1370, 1372 (9th Cir. 1994) (citation and internal quotation marks omitted). "Whether a bankruptcy court has the power to release claims against a non-debtor is a question of law which we review de novo." *Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1401 (9th Cir. 1995) (citation omitted). We hold that the Clause, as applied to Credit Suisse, is valid.

The question before us is whether the bankruptcy court could release Credit Suisse, a creditor, from liability for certain potential claims against it by approving the Exculpation Clause.[2]

The liability release here is "narrow in both scope and time," *In re Yellowstone Mountain Club*, 460 B.R. at 272, limited to releasing the parties from liability for "any act or omission in connection with, relating to or arising out of the Chapter 11 cases" or bankruptcy filing, *id*. at 267. It does not affect obligations relating to the claims filed by creditors and discharged through the bankruptcy proceedings, as it exclusively exculpates actions that occurred during the bankruptcy proceeding, not before. And, during that time period, the Clause's release applies only to negligence

---

[2] As Blixseth has settled with the other parties covered by the Clause, we discuss the validity of the clause only as it releases Credit Suisse from liability.

claims; it does not release parties "from willful misconduct or gross negligence." *Id*. Further, the Clause covers only parties "closely involved" in drafting the Plan—as relevant here, Credit Suisse. *Id.* at 277. The bankruptcy court reasoned that Credit Suisse should be covered because, as the largest creditor, it "had the ability to single-handedly disrupt the entire confirmation process," but had become a "plan proponent[]" through its direct participation in the negotiations that preceded the adoption of the Plan. *Id*. at 275–77. Altogether, as the bankruptcy court noted, the Exculpation Clause is not "a broad sweeping provision that seeks to discharge or release nondebtors from any and all claims that belong to others." *Id*. at 270.[3]

Blixseth primarily contends the Exculpation Clause violates 11 U.S.C. § 524(e). Subject to exceptions not relevant here, § 524(e) establishes that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." We have interpreted the section generally to prohibit a bankruptcy court from discharging the debt of a non-debtor. *See In re Lowenschuss*, 67 F.3d at 1402.[4]

---

[3] Neither party contests on appeal the bankruptcy court's interpretation of the Clause.

[4] There is a long-running circuit split on this issue. Other circuits do allow bankruptcy plans to "discharge the debts of certain non-debtor third parties." *Deocampo v. Potts*, 836 F.3d 1134, 1143 (9th Cir. 2016) (citing *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 702 (4th Cir. 1989)). *See generally* Joshua M. Silverstein, *Hiding in Plain View: A Neglected Supreme Court Decision Resolves the Debate over Non-Debtor Releases in Chapter 11 Reorganizations*, 23 Emory Bankr. Dev. J. 13 (2006).

We conclude, however, that § 524(e) does not bar a narrow exculpation clause of the kind here at issue—that is, one focused on actions of various participants in the Plan approval process and relating only to that process.

Section 524(e) establishes that "discharge of a *debt* of the debtor does not affect the liability of any other entity on . . . *such debt*." 11 U.S.C. § 524(e) (emphases added). In other words, "the discharge in no way affects the liability of any other entity . . . for the *discharged* debt." 4 Collier on Bankruptcy ¶ 524.05 (emphasis added). By its terms, § 524(e) prevents a bankruptcy court from extinguishing claims of creditors against non-debtors over the very debt discharged through the bankruptcy proceedings. *See In re PWS Holding Corp.*, 228 F.3d 224, 245–46 (3d Cir. 2000) (making the same point).

That § 524(e) confines the debt that may be discharged to the "debt of the debtor"—and not the obligations of third parties for that debt—conforms to the basic fact that "a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability. . . . The debt still exists, however, and can be collected from any other entity that may be liable." *Landsing Diversified Props.-II v. First Nat'l Bank & Tr. Co. of Tulsa (In re W. Real Estate Fund)*, 922 F.2d 592, 600 (10th Cir. 1990) (alteration in original) (quoting *In re Lembke*, 93 B.R. 701, 702 (Bankr. D.N.D. 1988)); *see also Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996). As § 524(a) elucidates, a discharge

> voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . . [;] operates as an injunction against the

> commencement or continuation of an action . . . to collect, recover or offset any such [discharged] debt as a personal liability of the debtor . . . [;] and operates as an injunction against the commencement or continuation of an action . . . to collect or recover from, or offset against, property of the debtor.

11 U.S.C. § 524(a). A bankruptcy discharge thus protects the debtor from efforts to collect the debtor's discharged debt indirectly and outside of the bankruptcy proceedings; it does not, however, absolve a non-debtor's liabilities for that *same* "such" debt.

The legislative history of § 524(e) makes clearer the distinction between claims for the underlying debt and other claims, such as those relating specifically to the bankruptcy proceedings. As *Underhill v. Royal* summarized, § 524(e) is a

> reenactment of Section 16 of the 1898 Act which provided that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Act of July 1, 1898, ch. 541, § 16, 30 Stat. 550 (formerly codified at 11 U.S.C. § 34 (1976)).

769 F.2d 1426, 1432 (9th Cir. 1985) (alteration in original). The emphasis on the liability of co-debtors and guarantors, but not creditors or other third parties, indicates the intended scope of Section 16 and, by extension, § 524(e). "The import of Section 16 [of the 1898 Act] is that the mechanics of

administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities." *Id*. (alterations in original) (quoting *Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir. 1982) (per curiam)). Like its predecessor provision in the 1898 Bankruptcy Act, § 524(e) prevents a reorganization plan from inappropriately circumscribing a creditor's claims against a debtor's co-debtor or guarantors over the discharged debt, and so does not apply to the Clause before us.

Consistent with our analysis, the Third Circuit has upheld an exculpation clause similar to the one here at issue. *PWS*, 228 F.3d at 245–46. In doing so, the court took into account that the exculpated non-debtors there were members of the creditors' committee and related professionals and individuals. At the same time, and more broadly, *PWS* stated that "Section 524(e), by its terms, *only* provides that a discharge of the debtor does not affect the liability of non-debtors on claims by third parties against them *for the debt discharged in bankruptcy*," *id*. at 245 (emphasis added), and held that the partial exculpation for acts committed during the process of developing and confirming a Chapter 11 plan did not "affect the liability of another entity on a debt of the debtor within the meaning of § 524(e)," *id*. at 247.

Contesting this limited view of § 524(e), Blixseth directs us toward broad language we have used in three cases in which we interpreted § 524(e) to bar nondebtor releases. The first of these cases, *Underhill*, stated that "the bankruptcy court has no power to discharge the liabilities of a nondebtor pursuant to the consent of creditors as part of a reorganization plan." 769 F.2d at 1432, *rejected on other grounds by Reves v. Ernst & Young*, 494 U.S. 56 (1990). *In re American Hardwoods, Inc.* added that "Section 524(e) . . .

limits the court's equitable power under section 105 to order the discharge of the liabilities of nondebtors." 885 F.2d 621, 626 (9th Cir. 1989). Finally, based on *Underhill* and *American Hardwoods*, *Lowenschuss* declared "[t]his court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors." 67 F.3d at 1401.

But *Underhill*, *American Hardwoods*, and *Lowenschuss* all involved sweeping nondebtor releases from creditors' claims on the debts discharged in the bankruptcy, not releases of participants in the plan development and approval process for actions taken during those processes. *Underhill*, for example, disapproved a release provision that discharged "*all* claims against the debtor, *any* affiliate of the Debtor, and *any* insider of the debtor," including for securities law violations that occurred prior to the bankruptcy filing. 769 F.2d at 1429–30 (emphases added) (internal quotations marks omitted). *American Hardwoods* involved an injunction that, like a release provision, would have permanently prevented a creditor from collecting any debt from American Hardwoods' guarantors—the president and vice president of American Hardwoods—on American Hardwoods' discharged debts. 885 F.2d at 622. And *Lowenschuss* dealt with a "Global Release" provision that, true to its title, "released numerous parties . . . from all claims." 67 F.3d at 1397, 1401. In each of these cases, the breadth of the coverage—the "Global Release" in *Lowenschuss*; the permanent injunction in *American Hardwoods*; and the "all claims" exculpation in *Underhill*—would have affected the ability of creditors to make claims against third parties, including guarantors and co-debtors, for the debtor's discharged debt.

In contrast, the Exculpation Clause here deals only with the highly litigious nature of Chapter 11 bankruptcy proceedings.[5] As one of the bankruptcy attorneys in this case stated during the bankruptcy court's hearing on the Exculpation Clause, in bankruptcy proceedings lawyers "battle each other tirelessly . . . . oxes [sic] are gored." 460 B.R. at 274 (internal quotation marks omitted). Rather than provide an unauthorized "fresh start" to a non-debtor, *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 251–53 (5th Cir. 2009), the Clause does nothing more than allow the settling parties—including Credit Suisse, the Debtors' largest creditor—to engage in the give-and-take of the bankruptcy proceeding without fear of subsequent litigation over any potentially negligent actions in those proceedings.[6]

Under 11 U.S.C. § 105(a), which empowers a bankruptcy court to "issue any order, process, or judgment

---

[5] Notably, Blixseth has never shown that the Exculpation Clause impermissibly releases Credit Suisse—or anyone—from any potential viable claims he might bring. At oral argument, Blixseth raised the dismissal of a breach of contract claim against Credit Suisse in a separate suit he filed in the District of Colorado. *See Blixseth v. Cushman & Wakefield of Colo., Inc.*, 2013 WL 5446791 (D. Colo. 2013). The district court there did determine that the Exculpation Clause barred his claim, but the claim involved Credit Suisse's participation in the bankruptcy proceedings, not its conduct outside those proceedings. *Id*. at *9.

[6] Blixseth does not challenge the Exculpation Clause on the grounds that it violates the "hallmarks of permissible non-consensual releases—fairness, necessity to the reorganization, and specific factual findings to support these conclusions." *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000). We therefore do not consider that possibility in detail, but we do note that, based on the bankruptcy courts findings, *In re Yellowstone Mountain Club, LLC*, 460 B.R. at 272, the Clause almost certainly displays these hallmarks.

that is necessary or appropriate to carry out the provisions of [Chapter 11]," and 11 U.S.C. § 1123, which establishes the appropriate content of a bankruptcy plan, the bankruptcy court here had the authority to approve an exculpation clause intended to trim subsequent litigation over acts taken during the bankruptcy proceedings and so render the Plan viable. Section 524(e) constrains this power by ensuring that no third party is released from its obligation for the underlying debt. *See* 11 U.S.C. § 1123(a); *Am. Hardwoods*, 885 F.2d at 625–26. But, as we have discussed, the Exculpation Clause does not affect claims for that debt, and so it was within the bankruptcy court's power to approve the Exculpation Clause as a part of the Plan.[7] According to *PWS*, similar limited exculpatory clauses focused on acts committed as part of the bankruptcy proceedings are "apparently a commonplace provision in Chapter 11 plans," 228 F.3d at 245; *see also In re Yellowstone Mountain Club*, 460 B.R. at 271, 274, presumably because of the features of bankruptcy litigation just noted.[8]

---

[7] The Fifth Circuit has reached a conclusion opposite ours. *In re Pacific Lumber Co.* held that § 524(e) barred a release provision that would have released non-debtors who were not "co-liable for the Debtors' pre-petition debts . . . . from any negligent conduct that occurred during the course of the bankruptcy," except insofar as the release covered negligent conduct of members of the creditors' committee already protected by a limitation on liability implied from the bankruptcy code. 584 F.3d at 252. *In re Pacific Lumber Co.* reasoned that "[t]he fresh start § 524(e) provides to debtors is not intended to serve this purpose." *Id.* at 252-53. But, as we have discussed, the Exculpation Clause does not provide a "fresh start" to Credit Suisse, because it affects only claims arising from the bankruptcy proceedings themselves.

[8] Unlike the creditors committee in *PWS*, one of the exculpated parties in that case, Credit Suisse, the Debtors' largest creditor, does not have an implied fiduciary duty derived from the statute to the participants

Aside from his § 524(e) argument, Blixseth also argues he is not bound by the Plan's settlement because there was no consideration for the settlement and he was not in privity with the parties. These arguments misunderstand the source of a bankruptcy court's power. As *Underhill* explained, "When a bankruptcy court discharges the debtor, it does so by operation of the bankruptcy laws, not by consent of the creditors. . . . [T]he payment which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligators." 769 F.2d at 1432 (internal quotation marks omitted) (quoting *Union Carbide Corp.*, 686 F.2d at 595). Whether or not there was consideration and privity, the bankruptcy court had the power to confirm the Plan.

## IV

In sum, we shall not dismiss Blixseth's appeal because of his failure to reply to our show cause order. We remain bound by our earlier decision that Blixseth's challenge to the Exculpation Clause is not equitably moot. Considering the merits of Blixseth's challenge, we hold that § 524(e) does not prohibit the Exculpation Clause at issue, because the Clause covers only liabilities arising from the bankruptcy proceedings and not the discharged debt. Perhaps we have reached the end of this matter.

**AFFIRMED.**

---

of the bankruptcy proceedings. 228 F.3d. at 246; *see also* 11 U.S.C. § 1103(c). But the fundamental point remains that the Clause, as applied to Credit Suisse, does not reach "such debt" within the meaning of § 524(e)—it merely releases Credit Suisse from some potential liability that might arise from its actions in the bankruptcy proceedings.